*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



★ ★ ★        ★ ★ ★

# MEMORANDUM OPINION

No. 04-09-00644-CV

**IN THE INTEREST OF D.P.R.V.**, D.T.V., and M.K.S.

From the 81st Judicial District Court, Karnes County, Texas
Trial Court No. 08-09-00153-CVK
Honorable Fred Shannon, Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice

Sitting:         Catherine Stone, Chief Justice
                Sandee Bryan Marion, Justice
                Marialyn Barnard, Justice

Delivered and Filed:    May 26, 2010

AFFIRMED

This is an appeal from the trial court's order denying appellant's motion for new trial, following the trial court's order terminating appellant's parental rights to her three children. We affirm.

## GROUNDS FOR TERMINATION

Following a September 2009 jury trial, the trial court terminated appellant's parental rights on the grounds that appellant: (1) knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children; (2) engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children; and (3) failed to comply with the

provisions of a court order that specifically established the actions necessary for appellant to obtain the return of the children who have been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services ("DFPS") for not less than nine months as a result of the children's removal from the parent under Chapter 262 for the abuse or neglect of the children. *See* TEX. FAM. CODE ANN. §161.001(1)(D), (E), (O) (Vernon Supp. 2010).

In her motion for new trial, appellant challenged the sufficiency of the evidence in support of only the first and third grounds for termination. On appeal, appellant again raises a sufficiency challenge to these same two grounds. However, in neither her motion for new trial, nor on appeal, does appellant challenge the sufficiency of the evidence in support of the second ground for termination. Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re S.F.*, 32 S.W.3d 318, 320 (Tex. App.—San Antonio 2000, no pet.); *see also* TEX. FAM. CODE ANN. § 263.405(i) (Vernon 2008) ("The appellate court may not consider any issue that was not specifically presented to the trial court in a timely filed statement of the points on which the party intends to appeal or in a statement combined with a motion for new trial."). Because the one unchallenged finding will support the order of termination, it is unnecessary to review appellant's legal and factual sufficiency arguments as to the other two grounds.

**BEST INTEREST**

Appellant also challenges the legal and factual sufficiency of the evidence in support of the trial court's finding that termination was in the children's best interest. TEX. FAM. CODE ANN. §161.001(2).

To determine whether involuntary termination of the parent-child relationship is in a child's best interest we consider the following factors: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to those seeking custody to help promote the best interest of the child; (6) the plans those seeking custody have for the child; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Although not an exhaustive list, the *Holley* factors focus on the best interest of the child rather than the best interest of the parent. *See* TEX. FAM. CODE ANN. § 153.002 (Vernon 2008) ("primary consideration" is "the best interest of the child"). In addition to the *Holley* factors, a parent's inability to provide adequate care for the child, lack of parenting skills, poor judgment, and repeated instances of immoral conduct may also be considered when looking at best interest. *In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.).

Although evidence of acts or omissions under section 161.001(1) does not relieve the DFPS from proving the best interest of the child, the same evidence may be probative of both issues. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). Therefore, we may consider the evidence underlying the three grounds for termination in considering whether termination is in the children's best interest. At the time of the 2009 trial, appellant's son D.P.R.V. was thirteen, her other son D.T.V. was twelve, and her daughter M.K.S. was seven. DFPS first became involved with the family in August 2001 on charges that D.P.R.V.'s father (Fernando) sexually assaulted him. D.P.R.V. was five years old at the time of the investigation. Although appellant signed a safety plan that provided she would not

allow the child to have any contact with his father and despite her concerns that Fernando might continue to abuse "the boys," she eventually allowed Fernando to have contact with D.P.R.V. because he "wanted to see his son."

When appellant was told that D.T.V. had brought razor blades to school, appellant said she did not know where he got the blades. Appellant said D.T.V. had a close relationship with Fernando, his father, and D.T.V. denied ever having been sexually assaulted by Fernando. In March 2007, M.K.S. showed her substitute teacher's assistant a small screw driver. When the teacher asked her where she had gotten the object, M.K.S. pointed to her "bottom" and said her brother put it there. Appellant testified D.P.R.V. admitted to her he had put the screwdriver in M.K.S.'s underwear, but he denied inserting it into her rectum. M.K.S. made an outcry of sexual abuse by appellant's boyfriend, who was living with the family at the time. Appellant did not know how many times he had assaulted M.K.S. because appellant "was so distraught [she did not] remember it."

M.K.S. and D.T.V. originally were placed in a foster home, and D.P.R.V. was placed in a residential treatment facility. D.T.V. told his foster mother that D.P.R.V. had asked D.T.V. to perform oral sex on him. D.T.V. admitted he kissed M.K.S. M.K.S. told her foster mother she was taken out of school because she had a screwdriver in her "cookie," which is what she called her vagina. M.K.S. also told her foster mother that D.P.R.V. would get her to perform oral sex on him.

On appeal, appellant alleges the children want to return home. D.P.R.V. testified he wanted to be with his family. M.K.S. did not testify, but Megan McPheron, a therapist at the Children's Shelter, Residential Treatment Center ("RTC"), testified M.K.S. was at the RTC because her aggressive behavior was too difficult to manage in a foster home. According to McPheron, M.K.S. said her mother was mean and she does not want to return home to her mother because she does not

trust her. McPheron also said M.K.S. did not want to go home because she was afraid and did not trust her mother to take care of her. Nothing in the record indicates the desires of D.T.V.

In further support of her argument that return of the children to her is in their best interest, appellant points to evidence that the children have been in numerous placements because of their behavioral problems since they were taken from her care. Joannie Garcia, a court-appointed special advocate for the children, testified she visited with the children over a period of about eighteen months, and during this time, the children were in and out of therapy, and sexual abuse counseling only began towards the end of her time with the children. Appellant also relies on the testimony of her therapist, Dr. Gloria Fondren, who testified she did not believe appellant would repeat her past bad choices with men; however, she was concerned about the children acting aggressively or sexually acting out with each other. Dr. Fondren voiced her concern that appellant needed to learn to rely on herself instead of relying on men to help her. Dr. Fondren believed appellant should have supervised visitation with her children, but she did not believe the children currently could be safely reunited with appellant.

Katherine Elseth, a DFPS caseworker, did not believe the children could be safely placed with appellant for several reasons. Appellant's utilities had been turned off, and she has not followed through with putting up doors inside her home and otherwise implementing a plan to keep the children safe. Appellant works from 9:00 a.m. in the morning until 10:00 p.m. at night, and has yet to change her work schedule to be home with the children. Elseth said all the children displayed extreme behavioral problems, and she was concerned about them all living together in the same environment if that environment was not sufficiently structured. Elseth explained it was difficult to facilitate family therapy for the first eight months of the case because appellant did not attend her

own counseling sessions and because the children's therapist would not recommend family counseling. Although appellant has started to comply with therapy, Elseth did not believe she has demonstrated the permanent changes necessary to demonstrate that the children could safely return to her care.

Elseth said D.P.R.V. would continue to receive individual counseling as well as group therapy for his anger management and sexual issues. Given the sexual abuse allegations against D.P.R.V., Elseth believed his current placement in a residential treatment center was best for him because it was a very structured environment. Elseth did not believe going home to his family was in his best interest because he would not receive the structure he needs at home or the services he is currently receiving. She also believed he might be a physical threat to himself or others, and he might re-offend. She did not think D.P.R.V. was immediately adoptable, and given his age, adoption was probably not feasible. Elseth believed D.T.V. needed to continue therapy because he lacked coping skills and he exhibited self-harming behavior such as biting himself and banging his head against a wall. He also exhibited aggression towards others. For these reasons, Elseth believed D.T.V. also should remain in a highly structured environment. She did not believe appellant could provide such a structure. Finally, as to M.K.S., Elseth was particularly concerned about M.K.S. being in the same home as D.P.R.V. Elseth said appellant's plan to keep the children safe was to sleep in the middle of the trailer with M.K.S. at one end and the boys at the other end. Elseth believed D.T.V. and M.K.S. could be adopted in the future.

Elseth's greatest fear for the children if they were returned to appellant was that D.P.R.V. would offend again and M.K.S. would be sexually abused again. Because appellant did not live in San Antonio, she has no current transportation, and the closest appropriate services for the children

are in San Antonio, Elseth was concerned the children would not receive the psychiatric care they needed. She also thought appellant might not be able to afford utilities or food, and appellant might not follow through with receiving assistance from Medicaid. In Elseth's opinion, after almost two and one-half years, appellant still had not demonstrated an understanding of how to care for her children.

Appellant testified she would protect her children by not having any relationships with men and she would not bring men into her home. Appellant said she would monitor her children "24/7" and keep them separated by putting up three doors inside the home, and she would put contact alarms on all the doors. Appellant stated she would continue to live in Falls City, and although she knew the children needed continued counseling, she has not investigated the availability of counseling for the children in Falls City.

Evidence about placement plans and adoption are relevant to best interest. *In re C.H.*, 89 S.W.3d at 28. However, the lack of evidence on definitive plans for permanent placement and adoption cannot be the dispositive factor; otherwise, determinations regarding best interest would regularly be subject to reversal on the sole ground that an adoptive family has yet to be located. *Id.* Instead, the inquiry is whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that termination of the parent's rights would be in the child's best interest, even if the agency is unable to identify with precision the child's future home environment. *Id.* We conclude that on this record the jury could reasonably have formed a firm conviction or belief that termination of appellant's rights would be in the children's best interest.

**APPELLANT'S COMPLAINTS REGARDING**
**TRIAL COURT'S ABILITY TO HEAR THE TERMINATION SUIT**

The children were removed from appellant's care in March 2007. The underlying case was tried based upon the DFPS's petition for conservatorship and termination of parental rights filed on September 30, 2008. It is unclear from the record, but apparently the DFPS had filed an earlier petition that was dismissed for failure to comply with the time lines set forth in Family Code section 263.401. On the same day as the dismissal, the DFPS filed its underlying September 2008 petition. The adversary hearing on this petition was held in September 2009.

On appeal, appellant contends there were no new grounds upon which DFPS could file its September 2008 petition after the first dismissal of the case. Appellant first points to Family Code section 262.107, which requires the trial court to order the return of the child at the initial hearing regarding a child taken into possession without a court order by a governmental entity unless the court is satisfied that "there is a *continuing* danger to the physical health or safety of the child if the child is returned to the parent . . . ." TEX. FAM. CODE ANN. § 262.107(b) (emphasis added). Appellant then relies on *In re Cochran*, 151 S.W.3d 275, 280 (Tex. 2004) for her contention that there was no new act upon which DFPS could file its September 2008 petition because the children had been in the care of DFPS since 2007. Because, according to appellant, any risk to the health or safety of her children would have resulted from their care while under the DFPS's temporary managing conservatorship, and not while they were in her care, there was no *continuing* danger to the physical health or safety of the children caused by an act or failure to act by her. Based on this argument appellant concludes the trial court did not have jurisdiction over the case to grant temporary orders.

We disagree with appellant's argument for two reasons. First, we do not agree with appellant's characterization of her complaint as a challenge to the trial court's jurisdiction. A trial court's jurisdiction over a parental-rights-termination case does not depend on a finding that "there is a continuing danger to the physical health or safety of the child if the child is returned to the parent." Nor does the court's jurisdiction depend on whether there exists a new act upon which DFPS could file its petition for termination. Instead, appellant's complaints go to the sufficiency of the evidence in support of the trial court's finding that there was a danger to the physical health or safety of the children caused by an act or failure to act by appellant. *See In re Cochran*, 151 S.W.3d at 280 (holding that "[o]ther evidence in the record, like the evidence of prior terminations, simply does not illustrate that an act or failure on the part of the parents posed a danger to [child's] physical health or safety."). Second, both appellant and her attorney signed an Agreed Temporary Order Following Adversary Hearing, which contains the court's finding that there was a continuing danger to the physical health or safety of the children caused by an act or failure to act by appellant. Neither in her motion for new trial, nor on appeal, does appellant contend her agreement to the temporary order was involuntary or unknowing. Therefore, we conclude her argument is without merit.

Appellant also asserts none of the children were residing in Karnes County, which is where the petition was filed, because the children had been in placement since 2007 in other counties. Appellant did not file a motion to transfer venue or any other objection to venue. And again, we note appellant and her attorney both signed the Agreed Temporary Order Following Adversary Hearing. Therefore, appellant has waived any objection to venue.

## CONCLUSION

We overrule appellant's issues on appeal and affirm the trial court's judgment.


Sandee Bryan Marion, Justice